# Exhibit 1

COVER SHEET | County: _____

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Audrey LaMonica | United Airlines f/k/a Continental Airlines |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE: Jaimeson E. Porter, BBO#689230, Kathy Jo Cook, BBO# 631389, KJC Law firm | ATTORNEY (if known) |

Board of Bar Overseers number:

1 Exchange Pl / Origin code and track designation
Worcester, MA 01608

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Employment, Contract and FMLA | (F) | (X) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................ $
2. Total Doctor expenses .................................. $
3. Total chiropractic expenses ............................ $
4. Total physical therapy expenses ........................ $
5. Total other expenses (describe) ........................ $
   Subtotal $

Documented lost wages and compensation to date .......... $ 88,000+
Documented property damages to date ..................... $
Reasonably anticipated future medical and hospital expenses .. $
Reasonably anticipated lost wages ....................... $ 308,000+
Other documented items of damages (describe) ............ $

Brief description of plaintiff's injury, including nature and extent of injury (describe)

The plaintiff alleges that she suffered lost earnings and other damages as a result of the conduct of her employer.

TOTAL $ 396,000+

CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL $ ..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record /s/ Jaimeson Porter         DATE: 2/3/15

A.O.S.C. 3-2007
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO:

**15 00141**

AUDREY LAMONICA, )
   *Plaintiff*, )
   )
VS. )
   )
UNITED AIRLINES, INC. )
f/k/a CONTINENTAL AIRLINES, INC. )
   *Defendants.* )

## COMPLAINT
### PARTIES

1. The plaintiff, Audrey LaMonica is an individual residing at 97 Willow Ave, Quincy, Norfolk County, Massachusetts.

2. The defendant, United Airlines, Inc. ("United" or the "airline"), is a corporation with its principal place of business at 233 South Wacker Drive, Chicago, Illinois, 60606.

3. This court has subject matter jurisdiction pursuant to statute and common law and personal jurisdiction over the defendants under the long-arm statute, M.G. L. c. 223A, §3, based upon the defendants transacting business in the Commonwealth of Massachusetts and/or the defendants contracting to supply services or things in the Commonwealth of Massachusetts.

### FACTS

4. Ms. LaMonica was hired by Continental Airlines in 1985 for the position of flight stewardess. She continued working for Continental Airlines for the next 28 years.

5. Sometime between 2010 and 2012 Continental Airlines was acquired by United Airlines. By 2012 Continental Airlines ceased operations. As a result, Ms. LaMonica became an employee of United Airlines. Around October or November 2012, significant changes

went into effect as Continental changed over to United, and Ms. LaMonica began reporting to new management under United.

6. In December 2012, Ms. LaMonica was diagnosed with ovarian cancer. As a result, she was forced to undergo chemotherapy and radiation treatment.

7. Around February 4, 2013, Ms. LaMonica began chemotherapy. Ms. LaMonica's new United supervisors, Joe (last name unknown) and Sheila (last name unknown), required Ms. LaMonica to use her paid vacation time to take the time off of work. They informed Ms. LaMonica that she would need to use her paid vacation time, her sick time, and her accrued/earned time to cover her absence from work while she received treatment.

8. Ms. LaMonica inquired whether she was entitled to medical leave under the Family Medical Leave Act. Joe and Sheila informed Ms. LaMonica that she was not entitled to any unpaid medical leave on the grounds that she was a "part time" employee and that she had not technically been a United employee for the requisite number of hours in the past year to qualify.

9. In fact, Ms. LaMonica had worked at least 35 hours per week or more on average since the start of her employ in 1986.

10. Throughout February and March 2013, Ms. LaMonica repeatedly inquired about medical leave, options for unpaid leave, and any other options that would allow her to keep her job. Ms. LaMonica informed her United supervisors that she expected she would only need a few extra weeks of leave beyond her earned time to complete her chemotherapy. Ms. LaMonica was repeatedly informed there were no options.

11. By the end of March 2013, Ms. LaMonica's sick time, 6 weeks of paid vacation time, and accrued/earned time were exhausted. As a result, Ms. LaMonica was informed she could no longer continue working for United. On or around March 27, 2013, Ms. LaMonica's last day of work, Ms. LaMonica had a final conversation with Joe and Shiela informing them that her chemotherapy was nearly completed, and requesting any options that would allow her to keep her job, including time off without pay. That request was again denied and Ms. LaMonica's employment was terminated. She was offered no retirement package and no severance.

12. United denied Ms. LaMonica the option of going on either short term or long term disability, both of which Ms. LaMonica had paid into throughout her career.

13. At the time of her termination Ms. LaMonica had approximately four weeks left of chemotherapy to finish. She would have been ready to return to work full-time by April or early May 2013 had she not been terminated.

14. Shortly before her last day of work, Ms. LaMonica learned that many other older former Continental employees were being offered "early out" packages by United to incentivize early retirement. The "early out" retirement packages ranged from $10,000 to $20,000 to over $50,000. Ms. LaMonica requested an "early out" retirement package. Her request was denied.

15. Other employees who retired were thrown retirement parties celebrating their years of service to the company. Ms. LaMonica was not given a retirement party.

16. Around or after her last day of work, Ms. LaMonica contacted Bob Bennett, her former Continental supervisor, and shared the circumstances surrounding her termination. Mr. Bennett informed Ms. LaMonica that her United supervisors, Sheila and Joe, were wrong to tell her that she was not entitled to medical leave. Mr. Bennett also informed Ms. LaMonica that he believed Sheila and Bob never informed United's General Manager, Mark Hussy, of Ms. LaMonica's medical condition and request for leave, but rather had made the decision to end her employment unilaterally.

17. Ms. LaMonica had also earned stock from her years at Continental. United informed Ms. LaMonica that the airline would not honor the stock that she had been promised.

18. After her termination Ms. LaMonica attempted log into United's employee access website, which provides both current and former United employees login access to their employee information and records, including hours worked and payroll information. Ms. LaMonica's employee information, which she should have been able to access indefinitely, had been deleted.

19. Ms. LaMonica completed treatment and was capable of working full time again by May 2013. She entered remission and has remained cancer-free ever since.

20. Ms. LaMonica is 58 years old. She had intended on working for United until her mid-60's, at which point she had planned to retire. Ms. LaMonica has been unable to find work since her termination and remains without income to date.

## CLAIMS AGAINST UNITED AIRLINES, INC.

### COUNT I
### VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
### (29 .S.C. § 2601, *et seq.*)

21. The plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

22. The plaintiff notified the defendant of a serious medical condition, and requested medical leave.

23. The defendant denied the plaintiff's request for medical leave and terminated her.

24. The defendant knew and/or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA.

25. The actions of the defendants as set forth above constitute a willful violation of the federal Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*

26. As a direct and proximate result of those misrepresentations, the plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the plaintiff demands judgment against the defendant and an award of damages, fees, costs, interest and further relief to which he is entitled.

### COUNT II
### BREACH OF CONTRACT

27. The plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

28. The defendant created a contract between the plaintiff and the defendant wherein the plaintiff was promised short term and long term disability insurance, stock, and other benefits in exchange for continued employment.

29. The defendant breached that contract by denying the plaintiff of those benefits and terminating the plaintiff's employment.

30. As a direct and proximate result, the plaintiff has suffered and continues to suffer

damages, including but not limited to the loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the plaintiff demands judgment against the defendant and an award of damages, fees, costs, interest and further relief to which he is entitled.

## COUNT III
## PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

31. The plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

32. The defendant, by its agents, servants and/or employees, promised to compensate the plaintiff in accordance with their agreement to provide her long term and short term disability insurance and stock upon retirement.

33. The plaintiff relied of the defendant's promise and as such performed in accordance with the agreement.

34. The defendant breached its agreement when it failed to act in accordance with the agreement.

35. As a direct and proximate result of the plaintiff's reliance on the defendant's promise, the plaintiff suffered damages, including but not limited to loss of income and loss of employment benefits.

WHEREFORE, the plaintiff demands judgment against the defendant for the above-described damages, plus interest and costs.

## COUNT IV

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

36. The plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

37. By the actions set forth above, the defendant deprived the plaintiff of receiving the benefits of her contract with United, including providing her with long term and short term disability and stock, continued employment, and the good reputation associated with continued employment.

38. The conduct of the defendants constitutes a breach of the implied covenant of good faith and fair dealing.

39. As a direct and proximate result, the plaintiff has suffered and continues to suffer damages, including but not limited to the loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the plaintiff demands judgment against the defendant and an award of damages, fees, costs, interest and further relief to which he is entitled.

## JURY CLAIM

The plaintiffs request a jury trial on all claims herein

Respectfully submitted,
Attorney for the Plaintiff,

KJC Law Firm, LLC

*/s/ Jaimeson Porter*

KATHY JO COOK
kjcook@KJCLawFirm.com
BBO # 631389
JAIMESON E. PORTER
jporter@kjclawfirm.com
BBO # 689230
10 Tremont Street
6th Floor
Boston, MA 02108
(617)720-8447